IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:06CV23-2-V
(5:03CR4-2-V)


MANUEL VASQUEZ MORENO,           )
    Petitioner,                  )
                                  )
           v.                      )          **O R D E R**
                                  )
UNITED STATES OF AMERICA,         )
    Respondent.                  )
_____)


    **THIS MATTER** is before this Court upon petitioner's "Motion
to Vacate, Set Aside, or Correct" under 28 U.S.C. §2255," filed
January 31, 2006.

## I.  <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

    Pertinent to this Motion, the record reflects that on
January 29, 2003, a twelve-Count Bill of Indictment was filed,
charging the petitioner (along with 16 other individuals) with
conspiracy to possess with intent to distribute five kilograms or
more of cocaine powder and 50 grams or more of cocaine base, all
in violation of 21 U.S.C. §846 (Count One).  The petitioner's
co-defendants also were charged with numerous other offenses,
including several counts of possession with intent to distribute
cocaine and cocaine base, and using and carrying firearms during
and in relation to drug trafficking offenses.

    On July 29, 2003, a Superceding Bill of Indictment was

filed, which added both defendants and charges to the case; however, such Indictment did not alter the single conspiracy charge against the petitioner.

In the meantime, by June 10, 2003, the petitioner had entered into a written Plea Agreement with the government. By the terms of the parties' Agreement, the petitioner agreed to plead guilty to the conspiracy charge set forth in Count One of the Indictment in exchange for the government's promise to recommend a three-point offense level reduction for the petitioner's full disclosure of his own relevant conduct.

Pertinent to the instant Motion, the petitioner also stipulated to several matters, including that his sentence should be calculated based upon his involvement with more than 15 but less than 50 kilograms of powder cocaine; that the Base Offense Level for the subject offense was 34; and that a two-level management enhancement was appropriate under U.S. Sentencing Guidelines §3B1.1(c).

Critically, the parties' Agreement did <u>not</u> preclude the imposition of any other enhancements to the petitioner's sentence. Rather, the Plea Agreement set forth the parties' understanding that "if the Probation Office determine[d] that a different offense level not addressed in th[at A]greement applie[d], and the Court f[ound] that the Probation Office [was] correct, then the Court w[ould] use that offense level or Guideline in determining the sentence."

On September 25, 2003, the Court conducted a Plea & Rule 11
Hearing, during which the Court engaged the petitioner in a
lengthy colloquy to ensure that his guilty plea was being intel-
ligently and voluntarily tendered.  In particular, the petitioner
advised the Court, <u>inter alia</u>, that he understood and agreed to
all of the terms of his Plea Agreement; that no one had threaten-
ed, coerced, intimidated him, or had promised him lenient
treatment in order to induce his guilty plea; that he was satis-
fied with counsel's services; and that he, in fact, was guilty of
the subject charge.  Thus, based upon the petitioner's sworn
assurances, the Court accepted his guilty plea.

Next, on September 7, 2004, the government filed its "Motion
For A Downward Departure . . . ."  Even after calculating the
benefits of his Plea Agreement, the government reported that the
petitioner's offense level and his criminal history category
(35/I) exposed him to a term of 168 to 210 months imprisonment.
However, the petitioner had provided substantial assistance to
the government; therefore, the government asked the Court to
reduce the petitioner's Offense Level to 30, and to impose a
sentence of 120 months imprisonment.

Subsequently on September 7, 2004, the Court held a Factual
Basis & Sentencing Hearing.  During the initial stages of the
Hearing, the petitioner addressed his concerns about proceeding
with the Hearing.  Specifically, the petitioner told the Court
that he had spoken with a family member whose "husband had had

3

problems with drugs," and such family member had agreed to help him replace his retained attorney with another attorney. However, the Court concluded that the petitioner had failed to demonstrate that his attorney should be discharged, or that his case should be continued so that he could obtain replacement counsel. Therefore, the Court denied the petitioner's de facto motion for a continuance.

Next, the Court entertained the petitioner's objection to the Pre-Sentence Report. On that point, counsel for the petitioner argued that the petitioner should not receive a firearm enhancement because he had not personally possessed a firearm. In response, the government called upon the case agent, presumably so that he could testify concerning the co-conspirators who were charged with firearms violations under 18 U.S.C. §924(c)(1) in Counts Five and Seven of the Indictment (defendants Jose Rios, Roderick Williams, Jose Rivera and Mario Carbajal). However, shortly after the agent began to testify, defense counsel advised the Court that the petitioner wanted to withdraw his objection to the firearm enhancement.

Thereafter, the Court accepted the calculations set forth in the petitioner's Pre-Sentence Report, and granted the government's downward departure Motion. The Court then allowed the petitioner to speak on his own behalf, at which time the petitioner did not complain about any difficulties with counsel; nor did he complain about the proposed sentence enhancements.

Instead, the petitioner simply reported that he had some additional information concerning drug dealing activities which he wanted to provide to the government.  However, the Court asked the petitioner to wait and reveal that information to the prosecutor at a more appropriate time.

Ultimately, the Court sentenced the petitioner to a term of 120 months imprisonment pursuant to the Sentencing Guidelines. However, the Court also acknowledged the recent ruling in Blakely v. Washington, 542 U.S. 296 (2004), and indicated in accordance with United States v. Hammoud, 381 F.3d 316 (4th Cir. 2004), that it would announce an alternative provisional sentence of 120 months imprisonment under 18 U.S.C. §3553(a).

At the conclusion of the Hearing, the petitioner advised the Court that he wanted to appeal his case, but with a different attorney.  Thereafter, the Fourth Circuit Court of Appeals appointed new counsel for the petitioner, and he proceeded with his appeal.

On appeal, the petitioner's new attorney filed a brief under Anders v. California, 386 U.S. 738 (1967), essentially representing that he had not found any meritorious issues for appeal. United States v. Moreno, 147 Fed. Appx. 328 (unpublished) (4th Cir. 2005).  Nevertheless, appellate counsel did question whether trial counsel had been ineffective in his representation of the petitioner.

Not surprisingly, the Court of Appeals reiterated its long-

standing position that claims against counsel cannot proceed on direct appeal "unless it appears conclusively from the record that counsel's performance was ineffective."  Further, the Court found that there was no such record of ineffectiveness.  In fact, the appellate Court stated that "the record reveal[ed] quite competent representation as [the petitioner] received the statutory mandatory minimum sentence, when prior to his plea, he was facing a possible sentence over twice as long."  However, the Court advised the petitioner that if he had other evidence on the issue of counsel's performance, he could present it in a motion to vacate.  Consequently, the Court affirmed the petitioner's conviction and sentence.

Undaunted by his lack of success, on January 31, 2006, the petitioner filed the instant Motion to Vacate, alleging that counsel was ineffective in three ways.  First, the petitioner claims that counsel was ineffective because he failed to "secure a beneficial plea agreement" for him.  Second the petitioner claims that counsel was ineffective because he failed to object to the Pre-Sentence Report's recommendation for the firearm enhancement.  Third, the petitioner claims that counsel was ineffective because he failed "to preserve [the petitioner's] . . . Blakely issues."

Notwithstanding his obvious beliefs to the contrary, however, this Court has carefully reviewed the instant Motion along with the relevant documents from the record, and the Court has

determined that this Motion should be summarily <u>denied</u> and <u>dismissed</u> for lack of merit.

## II.  <u>ANALYSIS</u>

### <u>The petitioner cannot demonstrate either deficient performance or prejudice on his claims of ineffective assistance of counsel</u>.

As has been noted, the petitioner explains in his Memorandum of Law that the "sole issue [sic]" is whether counsel subjected him to ineffective assistance by: a) failing to secure a beneficial plea agreement; b) failing to object to the firearm enhancement recommendation; and c) failing to "preserve" the petitioner's "<u>Blakely</u> issues."  Nevertheless, as the Court will explain below, these claims must fail, ultimately because the petitioner is both mistaken as to the facts of his case, and/or the legal significance of those facts as they pertain hereto.

Indeed, with respect to allegations of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, <u>and</u> that he was prejudiced thereby.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687-91 (1984).  In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. <u>Id</u>. at 689; <u>see also</u> <u>Fields v. Attorney Gen'l. of Md.</u>, 956 F.2d 1290, 1297-99 (4th Cir.), <u>cert. denied</u>, 474 U.S. 865 (1985); <u>Hutchins v. Garrison</u>, 724 F.2d

1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984); and Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977), cert. denied, 435 U.S. 1011 (1978).

Furthermore, in considering the prejudice prong of the analysis, the Court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998), cert. denied, 528 U.S. 855 (1999). Rather, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id., quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). Under these circumstances, the petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297, citing Hutchins, 724 F.2d at 1430-31. If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290, citing Strickland, 466 U.S. at 697.

More critically, a petitioner who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet. See Hill v. Lockhart, 474 U.S. at 53-59; Fields, 956 F.2d at 1294-99; and Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir.), cert. denied, 488 U.S. 843 (1988). The Fourth Circuit described the petitioner's additional burden in a post-guilty plea claim of ineffective assistance of counsel as follows:

> When a [petitioner] challenges a conviction
> entered after a guilty plea, [the] "prejudice
> prong of the [Strickland] test is slightly
> modified.  Such a defendant must show that
> there is a reasonable probability that, but
> for counsel's errors, <u>he would not have
> pleaded guilty and would have insisted on
> going to trial</u>."

<u>Hooper</u>, 845 F.2d at 475 (emphasis added); <u>accord</u> <u>Hill v. Lock-</u>
<u>hart</u>, 474 U.S. at 59; <u>and</u> <u>Fields</u>, 956 F.2d at 1297.

In evaluating post-guilty plea claims of ineffective assis-
tance of counsel, statements previously made under oath affirming
satisfaction with counsel are deemed binding in the absence of
"clear and convincing evidence to the contrary."  <u>Fields</u>, 956
F.2d at 1299, <u>citing</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 74-75
(1977).

At the outset of its discussion of the petitioner's claims,
the Court notes that despite his having filed the instant Motion
and a multi-page supporting Memorandum, nowhere in those docu-
ments does the petitioner assert or even suggest that but for
counsel's alleged ineffectiveness, he would not have pled guilty
and would have insisted upon going to trial.  Such omission is
both telling and legally significant in that it vastly undermines
the petitioner's ability to demonstrate that he was prejudiced in
this case.

1.  **The petitioner's complaint about counsel's negoti-
    ation of his Plea Agreement is feckless**.

Notwithstanding the foregoing omission, the record fore-

closes the petitioner's entitlement to relief in any event.  To
put it plainly, the petitioner is mistaken about the facts of his
case.  That is, the petitioner claims that counsel failed to
secure a beneficial plea agreement for him.  However, as was
noted by the appellate Court, prior to entering into the Agree-
ment which counsel negotiated, the petitioner "was facing a
possible sentence over twice as long" as the one he ultimately
received.

To put it simply, by signing that Agreement, the peti-
tioner's potential exposure was limited by virtue of his
stipulation to involvement with an amount of drugs which was much
lower than the amount for which the government could have sought
to hold him accountable.  Thus, the petitioner simply is mistaken
as to the value of his former attorney's efforts in this regard.

    **2.**   **<u>The petitioner's claim about counsel's alleged
failure to object is foreclosed by the record</u>**.

Second, as to his claim that counsel failed to object to the
firearm enhancement, again the petitioner is mistaken.  To be
sure, as was already noted, counsel did initially object to the
subject enhancement during the Sentencing Hearing, but he
subsequently withdrew the objection after discussing the matter
with the petitioner.  Therefore, the Court finds that this claim
is factually baseless.

Moreover, even if counsel had not objected, the petitioner
still could not demonstrate any prejudice on this claim.  Indeed,

the petitioner's secondary arguments are based upon his erroneous beliefs that his Plea Agreement precluded the subject enhancement, and/or that he could not be subjected to it because he personally did not possess a firearm.

As to the first misconception, the petitioner's Plea Agreement simply did <u>not</u> contain any language which limited his enhancements only to those upon which the parties had agreed.  On the contrary, the parties' Agreement expressly acknowledged that if the Probation Office found that a Guideline provision which was not addressed in the Agreement was applicable to the petitioner--such as the one pertaining to a firearm enhancement, and the Court also found it to be applicable, then such provision would be used to calculate the petitioner's sentence.  Thus, the petitioner has no factual basis to argue that his Plea Agreement precluded the imposition of a firearm enhancement.

As for the second misconception, the matter of whether or not the petitioner actually possessed a firearm was irrelevant at the time that the petitioner was sentenced.  Indeed, the Guideline provision in question provided that the subject enhancement could be imposed by the Court under the preponderance of the evidence standard "[i]f a dangerous weapon was possessed" during the commission of the drug offense unless it is clearly improbable that the weapon was connected thereto.  U.S. Sentencing Guideline §2D1.1(b)(1).  Furthermore, the law was clear that possession of a dangerous weapon by a co-defendant was a sufficient

basis for the enhancement, so long as the co-defendant's conduct was "in furtherance of . . . jointly undertaken criminal activity and was reasonably foreseeable by the defendant." <u>United States v. Nelson</u>, 6 F.3d 1049, 1054-57 (4th Cir. 1993).

Here, the petitioner does not deny that his co-conspirators used, carried and/or possessed firearms in violation of 18 U.S.C. §924(c)(1) as was alleged in the Indictment. Nor does the petitioner specifically deny the Pre-Sentence Report's representation that on an occasion, he directed a co-conspirator over whom he exercised control to possess an AK-47 rifle while such hireling stood watch for the petitioner. Therefore, the petitioner's self-serving protestations of innocence simply were not a barrier to the application of the enhancement.

Moreover, while the case of <u>Blakely v. Washington</u>, 542 U.S. 296 (2004) (generally holding that courts must no longer use judge-made findings--such as the ones made in connection with the imposition of the challenged firearm enhancement--in calculating sentences) was decided prior to the time that the petitioner was sentenced, at the time of that decision it was widely understood in the legal community that <u>Blakely's</u> facts made it inapplicable in the federal court context. In fact, it was not until the year <u>after</u> the petitioner was sentenced that the U.S. Supreme Court made its holding from <u>Blakely</u> applicable in the federal court. <u>See</u> <u>United States v. Booker/Fanfan</u>, 543 U.S. 220 (2005). Therefore, the petitioner was sentenced in accordance with the law as

it then existed, and he cannot establish that counsel was deficient for having failed to anticipate the subsequent change which was announced by the Booker decision.

Most critically, it has not escaped the undersigned's attention that at the time that the Court announced the petitioner's 120-month sentence pursuant to the Guidelines, it also advised the parties that, notwithstanding the Blakely decision, it would have imposed the same 120-month sentence in accordance with the relevant factors set forth under 18 U.S.C. §3553((a). Thus, even if the firearm enhancement had been omitted, it is clear on this record that the petitioner would have received the exact same sentence as was actually imposed. Consequently, he cannot possibly demonstrate any entitlement to relief on this claim.

### 3. <u>There were no Blakely issues for counsel to have preserved for the petitioner</u>.

Finally, with regard to the petitioner's last claim that counsel was ineffective for having failed to "preserve" his Blakely issues, here he seems to be arguing that since the Blakely ruling was announced several months before he was sentenced, counsel should have used that time to negotiate a new Plea Agreeent which deleted the managerial enhancement provision. Once again, however, the petitioner has misapprehended the significance of a critical fact.

To be sure, Blakely does not prevent a court from relying upon facts which are admitted by a defendant by way of a stipu-

13

lation or otherwise.  In fact, <u>Blakely's</u> language expressly provides that courts <u>can</u> rely upon facts which have been admitted by the defendant.  To put it simply, then, defense counsel had no greater bargaining power <u>after</u> the Supreme Court's announcement of the <u>Blakely</u> decision than he had prior to that announcement. Thus, the petitioner cannot possibly demonstrate that he was harmed by counsel's decision not to attempt a post-plea renegotiation of the parties' Agreement.

### III.  <u>CONCLUSION</u>

The record of this matter reflects that the petitioner is not entitled to any relief on his claims against counsel. Therefore, the instant Motion to Vacate will be <u>denied</u> and <u>dismissed</u>.

### IV. <u>ORDER</u>

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the petitioner's Motion to Vacate is **DENIED and DISMISSED.**

**SO ORDERED.**

Signed: March 23, 2006

Richard L. Voorhees
Chief United States District Judge

14